UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
SHEET METAL, AIR, RAIL AND
TRANSPORTATION WORKERS LOCAL UNION NO.
137; BOARD OF TRUSTEES OF THE                    **ORDER ADOPTING R&R**
INTERNATIONAL ASSOCIATION OF SHEET
METAL, AIR, RAIL, AND TRANSPORTATION
WORKERS LOCAL UNION NO. 137 INSURANCE            15-CV-2224(KAM)(PK)
FUND; INTERNATIONAL ASSOCIATION OF
SHEET METAL, AIR, RAIL, AND
TRANSPORTATION WORKERS LOCAL UNION NO.
137 ANNUITY FUND; INTERNATIONAL
ASSOCIATION OF SHEET METAL, AIR, RAIL,
AND TRANSPORTATION WORKERS LOCAL UNION
NO. 137 APPRENTICESHIP TRAINING FUND;
AND PAUL COLLINS JR SCHOLARSHIP FUND,

Plaintiffs,

    -against-

FRANK TORRONE & SONS, INC. d/b/a/
TORRONE SIGNS,

Defendant.
--------------------------------------X
**KIYO A. MATSUMOTO, United States District Judge:**

             Plaintiffs (collectively, "plaintiffs") Sheet Metal,

Air, Rail and Transportation Workers Local Union No. 137 (the

"Union"), the Board of Trustees of the International Association

of Sheet Metal, Air, Rail, and Transportation Workers Local

Union No. 137 Insurance Fund; the International Association of

Sheet Metal, Air, Rail, and Transportation Workers Local Union

No. 137 Annuity Fund; the International Association of Sheet

Metal, Air, Rail, and Transportation Workers Local Union No. 137

Apprenticeship Training Fund; and the Paul Collins Jr.

Scholarship Fund, commenced the instant action against defendant Frank Torrone & Sons, Inc. d/b/a Torrone Signs ("defendant") on April 20, 2015 by filing a complaint ("Compl." or the "complaint," ECF No. 1), under the Employee Retirement Income Security Act of 1974 ("ERISA").  (*See generally* Compl.)

Presently before the court is the Report and Recommendation of United States Magistrate Judge Peggy Kuo, filed on September 4, 2018, recommending that the court vacate the Clerk of Court's Entry of Default in this action (the "Default," ECF No. 11), and deny plaintiffs' third motion for a default judgment (the "Default Judgment Motion," ECF No. 35.) (Report and Recommendation re Motion for Summary Judgment ("R&R" or the "Report and Recommendation"), ECF No. 43, at 2, 15.) Plaintiffs timely objected to the Report and Recommendation (*see* Objection to R&R ("Obj."), ECF No. 44), but defendant did not object.  For the reasons set forth below, plaintiffs' objection is overruled, and the court adopts Judge Kuo's thorough and well-reasoned Report and Recommendation in its entirety.

## Background

The court assumes familiarity with the underlying factual allegations and procedural history, as set forth in greater detail in the Report and Recommendation.  (*See* R&R at 1-9.)

## I.  Plaintiffs' Allegations

As relevant here, plaintiffs allege in their complaint that, between May 1, 2013 and August 31, 2014, defendant violated ERISA and the terms of collective bargaining agreements between defendant and the Union (the "CBAs")[1] by failing to make certain required contributions to various employee benefit plans (the "Funds") and failing to employ Union members to perform certain work.  (*See* Compl. ¶¶ 6-7, 13-26.)

More specifically, the CBAs required defendant to "make monthly payments into each of the Funds 'for all Journeymen and Shop Production Workers,' at specified hourly amounts, and for all Apprentices at specified percentages of the Journeyman contribution rate."  (R&R at 2 (quoting CBAs Art. IX §§ 1-6).)  Further, the CBAs obligate defendant to require Union membership "as a condition of continued employment of all Employees performing any of the work specified in Article 1, Section 2" of the CBA, and to employ "no one but" Union members, "all who are members of the [bargaining] unit . . . on any work described in Article 1, Section 2" of the CBA.  (CBAs, Art. I § 3, Art. II § 1; *see also* R&R at 3 (discussing relevant CBA provisions).)

---

[1]     The CBAs are annexed as Exhibits A and B to the Declaration of Dante Dano (the "Dano Declaration," ECF No. 32), and as Judge Kuo observed in the Report and Recommendation, their terms are "identical for purposes of this action."  (R&R at 2.)

Article 1, Section 2 of the CBA, in turn, "specifies" and "describes" the following work:

> the manufacture, fabrication, assembly, erection, installation, dismantling, re-conditioning, adjustment, alteration, repairing, servicing and maintenance of all ferrous or non-ferrous sheet metal work of any and all substitute materials used in lieu thereof, in the manufacture and erection of all sheet metal, electrical, plastic, and neon signs, as well as commercial signs, road signs, bulletin boards and/or billboards for outdoor advertising, which would be erected on what is commonly known as a "Unipole" or any other similar type structure for the same said purpose.

(CBAs, Art. I § 2; *see also* R&R at 3 (quoting CBA provision).)

According to plaintiffs, defendant failed to comply with its obligations to make contributions to the Funds and to hire Union workers pursuant to the foregoing provisions of the CBAs. The complaint alleges that defendant applied to the New York City Department of Buildings ("DOB") for various "sign hanger permits to install work covered by [the] [CBAs]," but "failed to employ[] [Union] members to perform the covered work under the sign permits." (Compl. ¶ 22.) In support of this allegation and in connection with their Default Judgment Motion, plaintiffs have submitted copies of various work DOB sign hanging permits issued to defendant between April 2013 and August 2016. (R&R at 4 (citations omitted).) It is undisputed that defendants did not hire Union members for any jobs

pertaining to these permits, and thus did not make any contributions to the Funds as a result of the permitted jobs. (*Id.* at 13; *see also id.* at 4 (noting that defendant had not contacted the Union's business manager to seek Union workers for the permitted jobs).)

Also in connection with the Default Judgment Motion, plaintiffs have submitted estimates by the Union's business agent of the number of worker-hours needed to fabricate and install each sign. (*Id.* at 4 (citations omitted).) The worker-hour estimates form a basis for plaintiffs' damages calculations. (*Id.* (citations omitted).) Additionally, plaintiffs annexed to the complaint a report by their retained accounting firm, Schultheis & Panettieri, LLP ("S&P"), which indicates that between May 2013 and August 2014, defendant made out 65 checks to "cash" or "petty cash," in an aggregate amount of $93,147. (*Id.* at 4-5 (citing Compl. Ex. A, ECF No. 1-1, at 3, 5-7).)[2] S&P treated this entire $93,147 sum as attributable to payments to non-Union workers for covered work, and computed a resulting "fringe benefit deficiency" of $136,589.87, "including interest and audit cost . . . based on an assumed hourly wage rate of $20.00 per hour." (*Id.* at 5 (citations omitted); *see also* Compl. Ex. A. at 3, 5-7.)

---

[2]    References to page numbers in Exhibit A to the complaint are to the page numbers generated by the ECF system.

As the Report and Recommendation observed, the S&P report states no basis for assuming an hourly wage rate of $20.00. (R&R at 5 n.4) Further, defendant's inability to provide documentation substantiating defendant's assertion to S&P that the checks related to supply purchases is the only apparent rationale for treating the full $93,147 amount of the checks as payments to non-Union workers for covered work. (*Id.* at 5 (citing Compl. Ex. A at 3).)

## II. Procedural History

The complaint and a summons were served on defendant on June 16, 2015 (*see* Affidavit of Service, ECF No. 7), but defendant did not answer or appear timely, and the Clerk of Court entered the Default on October 16, 2015. (*See* Default.) Defendant eventually appeared on March 30, 2017. (*See* Notice of Appearance and Motion for Extension of Time, ECF No. 20.)

Although this action has involved a number of motions and contemplated motions by plaintiffs and defendant, only two are relevant to the Report and Recommendation and plaintiffs' objection: the plaintiffs' Default Judgment Motion, and defendant's opposition to the Default Judgment Motion and cross-motion to vacate the Default (the "Motion to Vacate"). (ECF No. 38.)[3] Plaintiffs filed the Default Judgment Motion and

---

[3]    As discussed in the Report and Recommendation, the other motions and contemplated motions in this action, including two previous motions by

supporting documents on September 26 and 29, 2018. (*See* Default

Judgment Motion; Memorandum of Law in Support, ECF No. 31; Dano

Declaration; Affirmation of Thomas Keane, Esq., ECF No. 30;

Declaration of Viorel Kuzma, ECF No. 33; Declaration of Lois

Fusco, ECF No. 34.) Following a stipulated extension of time to

respond (*see* October 26, 2017 Docket Order), on November 1,

2017, defendant filed its opposition to the Default Judgment

Motion, the Motion to Vacate the Clerk's entry of default, and

an answer to the complaint setting forth general denials and

eight affirmative defenses. (*See* Motion to Vacate; Answer, ECF

No. 37, ¶¶ 12-26 and at 4.)

Judge Kuo set a hearing on the Motion to Vacate and,

after defendant failed to appear at two scheduled hearings, (R&R

at 8; January 4, 2018 Minute Entry; February 22, 2018 Scheduling

Order), heard argument and orally denied the Motion to Vacate at

a telephonic hearing on February 22, 2018. (R&R at 9; *see also*

February 22, 2018 Minute Entry; Transcript of February 22, 2018

Hearing, ECF No. 41, at 41:19-43:24.) On April 27, 2018, the

undersigned judge formally referred the Default Judgment Motion

to Judge Kuo for a report and recommendation. (*See* April 27,

2018 Referral Order.) Judge Kuo issued the Report and

---

plaintiffs for entry of a default judgment, were filed improperly, withdrawn,
and/or never actually filed. (*See* R&R at 6-8.)

Recommendation on September 4, 2018, and plaintiffs timely objected on September 18, 2018.

## Legal Standard

### I. Review of Magistrate Judge Determinations

Pursuant to Federal Rule of Civil Procedure ("Rule") 72, the standard of review for a matter properly referred to a magistrate judge depends on whether the matter is "dispositive" or "nondispositive." *See* Fed. R. Civ. P. 72(a)-(b) (setting forth standards of review for dispositive and nondispositive matters); *accord* 12 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 3068.2 at 332 (4th Ed. 2015) ("Any pretrial matter properly referred to a magistrate judge must be categorized under Rule 72 as either 'dispositive' or 'nondispositive' for purposes of the standard of review to be exercised by the district judge.").

If a matter is "not dispositive of a party's claim or defense . . . [t]he district court must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). If a matter is dispositive, "the court is permitted to adopt those sections of the report to which no specific objection is made, so long as those sections are not facially erroneous." *Pizarro v. Bartlett*, 776 F. Supp. 815, 817

(S.D.N.Y. 1991) (citations omitted).  Where a party makes a
specific objection, however, "the court is required to conduct a
*de novo* review of the contested sections."  *Id.; accord* Fed. R.
Civ. P. 72(b)(3) ("The district judge must determine de novo any
part of the magistrate judge's disposition that has been
properly objected to . . . [and] may accept, reject, or modify
the recommended disposition.").

## II.  Entry of Default and Default Judgment

Rule 55 sets forth a "'two-step process' for the entry
of judgment against a party who fails to defend: first, the
entry of a default, and second, the entry of a default
judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645
F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d
99, 104 (2d Cir. 2005)).  Rule 55(a) governs entry of default,
and provides that "[w]hen a party against whom a judgment for
affirmative relief is sought has failed to plead or otherwise
defend, and that failure is shown by affidavit or otherwise, the
clerk must enter the party's default."  "'The court may set
aside an entry of default for good cause,' which requires the
court's consideration of three factors: '(1) whether the default
was willful; (2) whether setting aside the default would
prejudice the party for whom default was awarded; and (3)
whether the moving party has presented a meritorious defense.'"

*Cartin-Enario v. Tecson*, No. 15-CV-710(GLS)(DJS), 2016 WL 4703732, at *2 (N.D.N.Y. Sept. 8, 2016) (quoting Fed. R. Civ. P. 55(c) and *Peterson v. Syracuse Police Dep't*, 467 F. App'x. 31, 33 (2d Cir. 2012)).

Once a default is entered, a party seeking a default judgment may "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In determining whether to enter default judgment, the court is "guided by the same factors that apply to a motion to set aside entry of a default: (1) whether the default was willful; (2) whether the plaintiffs would be prejudiced by the denial of the motion for default judgment; and (3) whether there are any meritorious defenses to plaintiff's claims." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (collecting cases).

In adjudicating a motion for a default judgment, courts may also consider "numerous" other factors, including "whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or are in doubt," *id.* (citations omitted), as well as the nature of the failure to answer, "the merits of the plaintiff's substantive claim, the sufficiency of the complaint, the sum at stake," and the presence of excusable neglect. *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999)

(citing *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1152 (2d Cir. 1995); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); and *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

Additionally, it is well established that defaults and default judgments are disfavored, "[a] clear preference exists for cases to be adjudicated on the merits," and doubts are to be resolved in favor of the defaulting party. *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, 220 F.R.D. 404, 406 (S.D.N.Y. 2004) (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) and citing *Enron Oil*, 10 F.3d at 96) (discussing default judgments); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." (citation omitted)). Further, the Second Circuit has cautioned that because entry of default judgment represents an "extreme sanction," it "must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277 (citations omitted). Finally, subject to the foregoing guidance, "[t]he dispositions of motions for entries of defaults and default judgments and relief from the same. . . are left to the sound discretion of a district court." *Enron Oil*, 10 F.3d at 95 (citations omitted).

**Discussion**

**I.   The Report and Recommendation**

The Report and Recommendation correctly evaluates the appropriateness of a default judgment by examining whether defendant's default was willful, whether defendant presented a meritorious defense, and whether denial of the Default Judgment Motion would prejudice plaintiffs.  (*See* R&R at 9-15.)  The Report and Recommendation notes "a pattern of missed deadlines, missed court appearances, and deficient pleading, including Motion to Vacate papers which omitted key arguments."  (R&R at 11.)  In light of these issues, as well as the lengthy delay between service of the complaint, defendant's appearance, and defendant's presentation of argument on its Motion to Vacate, the Report and Recommendation concludes that defendant's default was willful.

Regarding the presence of a meritorious defense, the Report and Recommendation notes that the CBAs require that defendant "employ [Union] members . . . in performing its signage work, and . . . pay benefits for the hours they work."  (R&R at 13 (citing CBAs, Art. I §§ 2-3, Art. II § 1, Art. IX §§ 1-6).)  However, plaintiffs offered "no support" in the CBAs, related Declarations of Trust, or applicable law, for the position that plaintiffs are "entitled to contributions for work

12

done by *any* workers." (*Id.* at 14.)  Further, plaintiffs offered
no "direct evidence" that defendant "actually hired non-Union
workers to perform covered work." (*Id.* at 13.)  Plaintiffs
instead "dr[e]w an inference" from "the unexplained checks made
out to 'Cash'" and the "DOB permits . . . issued to [d]efendant
but on which jobs no [Union] members . . . were called to work."
(*Id.*)  In light of the foregoing, the Report and Recommendation
concludes that defendant presented a meritorious defense in
asserting that it did not perform any covered work, and that
"[t]here may . . . be merit to [d]efendant's argument that
benefit contributions are due only for the hours worked by
Union, not non-Union employees." (*Id.* at 14.)

    Finally, the Report and Recommendation observes that
plaintiffs' prejudice arguments "go primarily to delay and their
expenditure of 'considerable resources in time and legal fees to
obtain a default judgment.'" (*Id.* at 15 (quoting Plaintiffs'
Memorandum of Law, ECF No. 39, at 7).)  The CBAs and related
Declarations of Trust, however, "permit the recovery of
interest, legal fees and costs if there is a breach of the
agreement," and consequently the Report and Recommendation finds
plaintiffs' arguments unavailing. (*Id.* at 15.)  Further, the
Report and Recommendation notes that "prejudice results from
delay when it causes the loss of evidence, creates increased

difficulties of discovery, or provides greater opportunity for fraud and collusion," but that plaintiffs "have not pointed out any risk" of any of these potential problems. (*Id.* at 14-15 (internal quotation marks and citations omitted).)

Because of defendant's potentially meritorious defense and the lack of prejudice to plaintiffs, and taking into account the Second Circuit's strong preference for the disposition of matters on the merits, the Report and Recommendation recommends denial of the Default Judgment Motion. (*Id.* at 15 (citations omitted).) Additionally, in its conclusion, the Report and Recommendation recommends that the Default be vacated. (*Id.*)

## II. Plaintiffs' Objections

The main thrust of plaintiffs' objection is that, under the "law of the case" doctrine, Judge Kuo's February 22, 2018 oral denial of the Motion to Vacate should stand. (*See* Obj. at 2-4.) In presenting this argument, plaintiffs do not take issue with the Report and Recommendation's articulation of the law applicable to motions for a default judgment, and identify only one purported flaw in the application of relevant law. Specifically, plaintiffs assert that the Report and Recommendation fails to consider that plaintiffs will experience prejudice because vacatur of the Default "will only permit [defendant] to continue to benefit from its breach of the

14

collective bargaining agreement," which "undermines the strength of [the] Union's collective bargaining relationship with all other signatory employers." (Obj. at 3-4 (citation omitted).) Plaintiffs also assert that the parties' CBAs support their claims in this action, and that their complaint "alleges clear violations of the CBA[s]." (*Id.* at 4-5.) Based on these assertions, plaintiffs contend that the undersigned judge should decline to accept the Report and Recommendation and "proceed to consider the pending [Default Judgment Motion]." (*Id.* at 5.)

## A. Law of the Case Doctrine

### 1. *Applicable Law*

"As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted). Law of the case is "at best, a discretionary doctrine which does not constitute a limitation on the court's power," and instead "merely expresses the practice of the courts generally to refuse to reopen what has been decided." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) and *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)); *accord Arizona v. California*, 460 U.S. at 618 ("Law of

15

the case directs a court's discretion, it does not limit the tribunal's power." (citations omitted)).

The Second Circuit has cautioned, however, that although a district court may revisit earlier rulings in the same case, including under Rule 54(b), under the law of the case doctrine, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). Accordingly, earlier decisions in the same case "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

### 2. *Application to Recommendation to Deny Default Judgment Motion*

In raising their law of the case argument, plaintiffs do not clearly make a *specific* objection to the portion of the Report and Recommendation that recommends denial of the Default Judgment Motion. Plaintiffs instead raise law of the case solely to argue that Judge Kuo's February 22, 2018 denial of the

16

Motion to vacate should stand. (*See* Obj. at 2 ("The doctrine of the law of the case would argue against reversing the February 22nd ruling.").)

Consequently, although a motion for a default judgment is dispositive, a review of the recommendation to deny the Default Judgment Motion under a clear error standard may be appropriate. *See Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980(RA)(JLC), 2013 WL 5977440, at *1 n.1 (S.D.N.Y. Nov. 12, 2013) (concluding motion for default judgment is dispositive and collecting cases), *report and recommendation adopted*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014); *Pizzolo*, 776 F. Supp. at 817 ("[T]he court is permitted to adopt those sections of the report to which no specific objection is made, so long as those sections are not facially erroneous.").[4]

Even applying a *de novo* standard of review, however, the undersigned judge concludes that the Default Judgment Motion should be denied. "[T]he plaintiff is not entitled to a default judgment as a matter of right" solely because a party is in

_____

[4]    Additionally, the plaintiffs' objection regarding the factors that guide a court's discretion in determining whether to enter a default judgment raises only two specific purported flaws in the Report and Recommendation's analysis. First, the objection asserts that the Report and Recommendation fails to consider prejudice resulting from the Union's purportedly undermined position vis-à-vis other employers. (*See* Obj. at 2-4.) Second, the objection suggests that the Report and Recommendation erred in concluding that the CBAs do not require that defendant contribute to the Funds for hours worked by non-Union employees. (*See* Obj. at 5.) These arguments are addressed in greater detail below.

default. *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citation omitted). Consequently, even absent the recommendation to vacate the Default, the court must separately evaluate whether entry of a default judgment represents an appropriate exercise of its discretion. In making this determination, the court "is . . .guided by the same factors that apply to a motion to set aside entry of default," but may also consider "numerous" factors other factors. *O'Callaghan*, 242 F.R.D. at 73 (citations omitted). The court is mindful that default judgments are "disfavored," *Pecarsky*, 249 F.3d at 174, and a "weapon of last . . . resort." *Meehan*, 652 F.2d at 277 (citations omitted).

Here, the court finds that the following factors weigh against entry of a default judgment: defendant has presented a meritorious defense, the merits of plaintiffs' substantive claims are disputable, and proceeding to litigation on the merits will not prejudice plaintiffs. *See Pecarsky*, 249 F.3d at 171 (identifying factors that must be examined in determining whether to enter a default judgment); *Pinaud*, 52 F.3d at 1152 n.11 (concluding that district court was "quite right" to deny entry of default judgment where district court relied in part on the "disputable merits of [plaintiff's] claims").

The undersigned judge agrees with the Report and Recommendation's analysis of the existence of a meritorious defense. Plaintiffs' objection raises only one argument that is relevant to the Report and Recommendation's meritorious defense analysis. Specifically, plaintiffs assert, without citation to any supporting authority, that the CBA's requirement that non-Union members be required to join the Union as a condition of continued employment implicitly requires that defendant contribute to the Funds for non-Union work. (*See* Obj. at 5.) Even on this unsupported reading of the CBAs, however, defendant is plainly not required to contribute to the Funds where no covered work is performed whatsoever.

Further, the complaint indicates that plaintiffs' assertion that defendant hired non-Union workers to perform covered work is based entirely on the issuance of DOB permits and the issuance of checks to "Cash." (Compl. ¶¶ 16, 22 and Ex. A.) Defendant, however, asserts that it did not perform any work of the type set forth in Article 1, Section 2 of the CBAs, and that the permits were for "electrical work to illuminate signs," which was performed by a member of the relevant electricians' union. (R&R at 13-14 (citations omitted).) Nothing in the CBAs, in plaintiffs' objection, or in any other document before the court establishes that Article 1, Section 2

19

of the CBAs encompasses all of plaintiff's operations and, therefore, it is possible that the purported illumination work was not subject to the CBAs' Union employment and Fund contribution requirements. Thus, the basis of plaintiffs' substantive contentions is at least arguably tenuous, and defendant's denial that its employees performed any work for which Union employment and Fund contributions were required is at least facially plausible in light of the basis for plaintiffs' allegations and the CBAs.

Defendant's meritorious defense indicates also that plaintiffs' claims are disputable. Further supporting this conclusion, plaintiffs' accountants' report states that the accountants compared defendant's payroll records to tax filings and "the contribution base . . . for each participant reported to the Funds," and found no indication of contribution shortfalls using these procedures. (Compl. Ex. A. at 2-3.)

Additionally, plaintiffs' argument in their objection regarding prejudice is unavailing. Plaintiffs assert that "vacating the entry of default will only permit [defendant] to continue to benefit from its breach of the collective bargaining agreement," which "undermines the strength of [the] Union's collective bargaining relationship with all other signatory employers." (Obj. at 3-4 (citation omitted).) Plaintiffs offer

no support for the proposition that the potential incentives faced by non-parties with which they have business relationships suffice to establish prejudice to plaintiffs in this action. Nor do plaintiffs explain why the fee shifting provisions in the CBAs and related Declarations of Trust do not suffice to mitigate the possible harm plaintiffs identify. (*See* R&R at 15 (noting fee shifting provisions).)

Moreover, plaintiffs do not assert that the Report and Recommendation erred in its observation that plaintiffs "have not pointed out any risk that evidence will be lost, any increased difficulties of discovery, or how proceeding on the merits . . . creates a greater opportunity for fraud or collusion." (*Id.*) Further, it appears that plaintiffs' prosecution of this action has been less than diligent, like the defense of this action. The undersigned judge agrees that plaintiffs have not pointed out any of the foregoing risks, difficulties, or opportunities for fraud, and consequently concludes, on *de novo* review, that plaintiffs have not established prejudice. *See Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) ("To establish prejudice in the context of a default, there must be a showing that 'the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for

fraud and collusion.'" (quoting *Davis v. Musler*, 713 F.2d 907,

916 (2d Cir. 1983))).

To recapitulate, defendant has presented a meritorious

defense, the substantive merits of plaintiffs' claims are

disputable, and proceeding to litigation on the merits will not

prejudice plaintiffs. Based on these determinations, and in

light of the Second Circuit's "clear preference . . . for cases

to be adjudicated on the merits," *Pecarsky*, 249 F.3d at 174, the

court concludes that, even if the Default were to stand

undisturbed under the law of the case doctrine, entry of default

judgment is not warranted here.

### 3. Application to Recommendation to Vacate Default

Although the Second Circuit has not definitively ruled

on the issue, the weight of authority indicates that vacatur of

a default is not dispositive. *E.g.*, *Unger v. Sogluizzo*, 673 F.

App'x 250, 252 n.2 (3d Cir. 2016) ("[Defendant's] motion to

vacate entry of default . . . was not a dispositive motion

because it did not seek to dispose of claims without further

proceedings."); *Burns v. Dailey*, 12-CV-0229(GTS)(ATB), 2012 WL

6201831, at *2 n.1 (N.D.N.Y. Dec. 12, 2012) ("[A] motion to

vacate default is non-dispositive in nature."). Therefore, a

magistrate judge may decide whether a default should be vacated,

and a district court need only review that determination to

ensure that it is not "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a).[5]

Upon review, the court finds no clear error or legal defect in Judge Kuo's conclusion that the Default should be vacated, and would uphold the conclusion even on *de novo* review. As set forth above, defendant has presented a meritorious defense, and moving forward with the instant action on the merits will not prejudice plaintiffs. Further, in the Second Circuit, "[d]efaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan*, 652 F.2d at 277 (citations omitted). Accordingly, Judge Kuo was correct in determining that, upon further evaluation of the issues of a meritorious defense and lack of prejudice, her February 22, 2018 denial of the Motion to Vacate should be revised. *See Color Tile*, 322 F.3d at 167 (noting that earlier decisions in the same case may be changed where there is, in relevant part, a "need to correct a clear error." (citation omitted)).

---

[5]     If vacatur of a default is dispositive, then the law of the case doctrine is inapplicable to this action.  The law of the case doctrine applies only where a court "decides upon a rule of law." *Arizona v. California*, 460 U.S. at 618 (citation omitted).  Magistrate judges, however, may not decide dispositive matters, and must instead "enter a recommended disposition." Fed. R. Civ. P. 72(b).  No recommended disposition was ever entered with respect to Judge Kuo's denial of the Motion to Vacate, and consequently, if the Motion to Vacate was dispositive, the initial denial was without effect.

**B.    Import of Collective Bargaining Agreement**

In light of the court's determination that plaintiffs' arguments regarding the applicability of the law of the case doctrine do not alter the conclusion that the Default should be vacated and the Default Judgment Motion denied, the court readily concludes that plaintiffs' arguments remaining arguments are without merit.  Plaintiffs argue, in sum and substance, that the CBAs require that defendant exclusively hire Union members to perform covered work, require Union membership as a condition of continued employment for employees performing covered work, and pay into the Funds.  (Obj. at 4-5.)  Plaintiffs further assert that the complaint "alleges clear violations of the CBA[s] in that [d]efendant has failed to contribute to the Funds for hours of work covered by the CBA[s] and . . . fail[ed] to employ Union members to perform the covered work."  (*Id*. at 4.)

Plaintiffs' arguments and assertions regarding the sufficiency of the complaint and the provisions of the CBAs fail to address defendant's meritorious defense that defendant did not actually perform covered work.  If this defense were established, it would defeat liability with respect to the complaint's allegations.  Establishment of this defense would also render irrelevant plaintiffs' argument that defendant must contribute to the Funds for all covered work regardless of

24

whether the employee performing it is a Union member. Accordingly, plaintiffs' arguments regarding the sufficiency of the complaint and the support it finds in the CBA do not call into question the Report and Recommendation's conclusions that the Default Judgment Motion should be denied and the Default vacated.

## Conclusion

For the foregoing reasons, the court affirms and adopts the Report and Recommendation in its entirety. Consequently, in an exercise of the court's discretion, the Default Judgment Motion is DENIED, and the default is VACATED. The parties are respectfully directed to file a joint letter stating their intentions with respect to this action within fourteen (14) days of entry of this Order.

**SO ORDERED.**

Dated:     October 3, 2018
           Brooklyn, New York

                           _____/s/ _____
                           Hon. Kiyo A. Matsumoto
                           United States District Judge